UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WARREN HARRIS,
    Plaintiff

v.

MURIEL E. BOWSER, *et al.*,
    Defendants.

Civil Action No. 18-cv-768 (CKK)

**MEMORANDUM OPINION**
(March 27, 2019)

This suit arises from Plaintiff Warren Harris's request for relief on his alleged claims of: (1) unreasonable seizure in violation of 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution (Count I); deprivation of fundamental rights in violation of 42 U.S.C. § 1983 and the Fifth Amendment (Count II); and deprivation of right to liberty without due process of law in violation of 42 U.S.C. § 1983 and the Fifth Amendment. Defendants in this case: (1) Muriel Bowser, in her official capacity as the Mayor of the District of Columbia ("the District"); (2) Tanya Royster, in her official capacity as the Director of the D.C. Department of Behavioral Health ("DBH"); (3) Mark Chastang, in his official capacity as Chief Executive Officer of St. Elizabeths Hospital ("St. Elizabeths"); and (4) Quincy L. Booth, in his official capacity as Director of the D.C. Department of Corrections ("DOC") have filed a [9] Motion to Dismiss Plaintiff's [1] Complaint for Declaratory and Injunctive Relief and for Compensatory

Damages, in its entirety.[1]  For the reasons set forth herein, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiff's claim for unreasonable seizure pursuant to the Fourth Amendment (Count I) is dismissed, while Plaintiff's claims for deprivation of his rights pursuant to the Fifth Amendment (Counts II and III) remain standing.  Furthermore, Plaintiff has standing to seek injunctive relief, and the District of Columbia need not be substituted for the Defendants in this matter.  A separate Order accompanies this Memorandum Opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's History of Commitment and Incarceration

On September 22, 1981, Plaintiff Warren Harris ("Plaintiff" or "Mr. Harris") was "committed into the custody of St. Elizabeths Hospital pursuant to Title 24, Section 301(d)(1) of the District of Columbia Code [now D.C. Code §§ 24-501 (d)(1)] until such time as (he) is ordered released," after being found guilty by reason of insanity on a misdemeanor charge of Possession of a Prohibited Weapon.  Compl., ECF No. 1, ¶¶ 2, 44; June 22, 2016 Consent Order for Limited Conditional Release ("June 22, 2016 Consent Order"), ECF No. 9-1, at 1.  On that same date, Plaintiff pleaded guilty to a charge of Manslaughter While Armed, for which he was sentenced to a period of incarceration of 7½ to 25 years, of which he served 10 years.  June 22, 2016 Consent Order, ECF No. 9-1, at 1.  For most of the subsequent 36 years, Mr. Harris "receiv[ed] either

---

[1] The Court's consideration focused on the following documents: (1) Complaint for Declaratory and Injunctive Relief, and for Compensatory Damages ("Compl."), ECF No. 1; (2) Defendants' Motion to Dismiss Complaint and Memorandum of Points and Authorities in support thereof ("Defs.' Mot. to Dismiss"), ECF No. 9; (3) Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 11; and (4) Defendants' Reply in Support of Motion to Dismiss ("Defs.' Reply"), ECF No. 13. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

inpatient care while residing within St. Elizabeths or outpatient care while living in the community[.]" Compl., ECF No. 1, ¶ 8. Plaintiff notes his classification as a "forensic" patient, which is terminology used by St. Elizabeths when an individual is "being treated by a mental health services facility for reasons related to his involvement in the criminal justice system." Compl., ECF No. 1, ¶ 9.

Mr. Harris has been granted several conditional releases since his commitment began, and he was returned to inpatient care most recently on October 15, 2014, following his conviction for Possession with Intent to Distribute a Controlled Substance (Cocaine) and Unlawful Possession of a Firearm, and his sentence of 36 months' incarceration, which was to be served in a facility operated by the Bureau of Prisons ("BOP") and followed by five years of supervised release. Compl., ECF No. 1, ¶¶ 46-50; June 22, 2016 Consent Order, ECF No. 9-1, at 1. Mr. Harris was "subsequently conditionally released pursuant to an order issued by Chief Judge Robert Morin of the D.C. Superior Court, on May 3, 2017, finding that Mr. Harris will not, in the reasonably foreseeable future, present a danger to himself or others because of mental illness if conditionally released[.]" Compl., ECF No. 1, ¶ 8; May 3, 2017 Consent Order for Conditional Release ("May 3 2017 Consent Order"), ECF No. 11-1, at 2.

B. **Events Leading to the Lawsuit**

Plaintiff filed his Complaint on April 4, 2018. Plaintiff's Complaint indicates that, on January 17, 2017, St. Elizabeths recommended that the Superior Court issue an order conditionally releasing Plaintiff to live in the community, on the basis that he would not pose a danger if released. Compl., ECF No.1, ¶¶ 3, 55. The D.C. Superior Court scheduled a hearing for April 5, 2017, to consider that recommendation. Compl., ECF No. 1, ¶¶ 3, 56. On April 5, 2017, the DOC picked up Plaintiff at St. Elizabeths and transported him to and from the D.C.

Superior Court. Compl., ECF No. 1, ¶¶ 4, 61. Plaintiff alleges that "the DOC removed [his] shoelaces and belt and subjected him to five-point restraints" before he rode in a van "with Class "A" patients, seated on a bench facing a metal screen dividing male and female patients," and when he arrived at the Courthouse, he was "placed in a holding cell." Compl., ECF No. 1, ¶¶ 4, 63-65.[2] Furthermore, "Mr. Harris' restraints remained in place and his belt and shoelaces were not provided to him" even when "appearing in court." Compl., ECF No. 1, ¶ 66. At that hearing, the court granted the Government's request for continuance and scheduled another appearance for May 3, 2017. Compl., ECF No. 1, ¶ 68. Mr. Harris, through counsel, complained about the April 5, 2017 transport and requested that St. Elizabeths transport him to his May 3, 2017 hearing, but that request was denied. Compl, ECF No. 1, ¶ 69. Mr. Harris was conditionally released from St. Elizabeths on May 3, 2017. Compl., ECF No. 1, ¶ 8.

### C. Plaintiff's Claims

Plaintiff alleges that the Defendants in this case — the District, DBH, St. Elizabeths, and DOC — "subject[ ] patients under the care and custody of St. Elizabeths to unwarranted and unconstitutional restraint when transporting patients to and from St. Elizabeths and D. C. Superior Court to attend court hearings about the status of their commitment at St. Elizabeths." Compl., ECF No. 1, ¶ 1. In Count I, Plaintiff alleges that the practice whereby forensic patients are placed in restraints during transport and put in a holding cell while awaiting a court hearing constitutes "an unreasonable seizure in violation of the Fourth Amendment[.]" Compl., ECF No. 1, ¶ 91. In Count II, Plaintiff alleges that the way in which he was transported by the DOC to and from the

---

[2] Plaintiff "had been granted conditional Class "E" status, the highest level of patient privilege granted by the Hospital and which permitted him to leave Hospital grounds multiple days a week without supervision." Compl, ECF No. 1, ¶ 4.

4

D.C. Superior Court, on April 5, 2017, and placed in a holding cell "violat[ed] [ ] his Fifth Amendment right to adequate medical care and to be free of unwarranted bodily restraint." Compl, ECF No. 1, ¶ 109. In Count III, Plaintiff alleges that the way in which he was transported by DOC to and from the D.C. Superior Court, on April 5, 2017, "constitute[s] a deprivation of liberty without due process of law in violation of the Fifth Amendment[.]" Compl., ECF No. 1, ¶ 117. Plaintiff seeks declaratory and injunctive relief because he "remains subject to being returned to St. Elizabeths for mandatory treatment and has no other adequate remedy to prevent future injury . . . "Compl., ECF No. 1, ¶¶ 92, 109, 118.

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.")

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained

5

in the complaint and may also consider 'undisputed facts evidenced in the record'") (internal citations omitted). Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. United States Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint. . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted), *aff'd.*, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasam v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Failure to State a Claim under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the

Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks and citations omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

Accordingly, for purposes of the pending motion, the Court takes judicial notice of the June 22, 2016 Consent Order for Conditional Release issued by Chief Judge Lee Satterfield in *United States of America v. Warren Harris*, Case No. 1981 FEL 000024, attached as Ex. 1 to Defendant's Motion to Dismiss, ECF No. 9-1, and the May 3, 2017 Consent Order for Conditional Release in the aforementioned case, which is attached as Ex 1 to Plaintiff's Opposition to the Motion to Dismiss, ECF No. 11-1.

### III. ANALYSIS

The Court will address the parties' arguments regarding Counts I, II, and III of the Plaintiff's Complaint before addressing Defendants' arguments that Plaintiff lacks standing to request prospective relief and determining whether the District should be substituted for the named Defendants being sued in their official capacities.

### A. Plaintiff's Fourth Amendment Claim (Count I)

The Fourth Amendment protects against unreasonable seizures. *In re Barnard*, 455 F.2d 1370, 1373-74 (D.C. Cir. 1971); *see* United States Constitution Amendment IV (guaranteeing "[t]he right of the people to be secure in their person, house, paper, and effects, against unreasonable searches and seizures.") A Fourth Amendment seizure occurs where the government "terminate[s] [a person's] freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007). A Section 1983 Fourth Amendment claim begins with a determination that a seizure occurred and then looks at whether the force used was unreasonable. *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("'Seizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'")

A "seizure" triggering the protections of the Fourth Amendment occurs when a person's freedom of movement is terminated or restrained either by "physical force or a show of authority." *Brendlin v. California*, 551 U.S. 249, 254 (2007); *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 273-74 (D.D.C. 2011). In the instant case, Mr. Harris was already in custody at St. Elizabeths at the time of the incident forming the basis of his Complaint — Plaintiff's transport by the DOC to the D.C. Superior Court — occurred. *See In re Barnard*, 455 F.2d 1370, 1373 (D.C. Cir. 1971) (holding that an involuntarily committed patient at St. Elizabeths was first "seized" when he "was taken into custody and involuntarily deprived of his liberty"); *Glass v Mayas*, 984 F. 2d 55, 58 (2d Cir. 1993) (An involuntary civil confinement itself amounts to a "seizure" under the Fourth Amendment).

Plaintiff had previously been conditionally released from St. Elizabeths on June 5, 2007, pursuant to an order by a D.C. Superior Court Judge, which contained a proviso that "if he violate[d] the conditions of this release[,] he [could] be returned to inpatient care at the Hospital."

Compl., ECF No. 1, ¶45. Plaintiff violated the conditions of his release by engaging in criminal activity, for which he received a 36-month term of imprisonment in federal prison in the Eastern District of Kentucky.[3] Compl., ECF No. 1, ¶¶ 46-47.[4] On October 15, 2014, Mr. Harris completed his prison term and was released to the custody of the U.S. Marshal and transported back to St. Elizabeths, where he remained for the next two and one-half years pursuant to the authority of the 1981 Commitment Order until he was conditionally released pursuant to a court order dated May 3, 2017. Compl., ECF No. 1, ¶ 8. Accordingly, even though Mr. Harris had been "granted conditional Class 'E' status" and he was "permitted to leave the grounds on his own [sometimes] . . . to attend a day treatment program in the community" Compl., ECF No. 1, ¶54, Plaintiff's freedom of movement had already been terminated prior to his April 5, 2017 transport to the D.C. Superior Court. *See generally Ratigan v. Trogvac*, No. 4:CV-08-1667, 2009 WL 648931, at *29 (M.D. Pa. Mar. 11, 2009) (plaintiff did not allege an illegal seizure for purposes of the Fourth Amendment since his freedom of movement had been terminated as he was "already in custody and incarcerated at USP-Allenwood at the time he claims [the] [defendant [ ] illegally seized him and detained [him] in the [Special Housing Unit] . . ." ); *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 718 (W.D. Pa. 2007) ("Even if it is assumed that it is possible for a prisoner to be seized, [the plaintiff's] Amended Complaint cannot be fairly read to allege a seizure [as] [h]e alleges only that he was removed from the Cambria County Jail, where he was already in detention, and taken to the Bedford County Jail, . . . ")

As with a convicted prisoner, "[t]he Fourth Amendment applies in a similar manner to

---

[3] Plaintiff's term of imprisonment was followed by five years of supervised release. June 22, 2016 Consent Order, ECF No. 9-1, at 1.
[4] According to Plaintiff, it is the practice of St. Elizabeths to turn over custody of forensic patients to DOC for transport to and from court. Compl, ECF No. 1, ¶ 70.

9

civilly committed individuals" because those individuals are also already in custody. *A.M. v. N.M. Dep't of Health*, 117 F. Supp. 3d 1220, 1262 (D.N.M. 2015); *see also Gundlach* v. *Mora*, Civil Action No. 13-cv-00031, 2013 WL 5862651, at *6 (D. Colo. Oct. 31, 2013) (dismissing claims for Fourth Amendment violations where plaintiff's "liberty had already been restrained" because she was in the custody of a mental health institute, and there was "no 'seizure' merely for transporting Plaintiff in a vehicle"). In *Gundlach,* the plaintiff proposed amending her complaint to allege that she was woken before dawn, surrounded and forced to get dressed, told she had no choice whether to go or not, loaded into a van and driven for hours, but the court noted that this did not change its analysis that there was no seizure. *Id.* at *6.

Plaintiff argues that DOC effected a new seizure on Plaintiff when it placed him into five-point restraints to transport him to the court because DOC does not have authority over St. Elizabeths patients as it is an entirely separate authority. Pl.'s Opp'n, ECF No. 11, at 9-10.[5] *But see Balkan v. Sawyer*, Civil Action No. 6:06-1467, 2011 WL 5041206, at *11 (N.D.N.Y. Oct. 21, 2011)) ("It is undisputed that [the plaintiff] was involuntarily civilly confined while at [Central New York Psychiatric Center], and thus, not a "free individual" for Fourth Amendment purposes. Moreover, because Balkum was already under CNYPC custody against his will, the use of restraints was not a separate 'seizure.'")

Plaintiff attempts to distinguish *Balkum* on two grounds: (1) the *Balkum* plaintiff failed to allege a Fourth Amendment claim regarding the use of restraints in his complaint, and he was inappropriately bringing it is as a new claim in an opposition to summary judgment and (2) the restraints were used by the psychiatric facility for transport outside the facility, "not by a separate

---

[5] The page cites are the page numbers assigned by the Electronic Case Filing ("ECF") system.

10

governmental authority." Pl.'s Opp'n, ECF No. 11, at 10-11. Plaintiff's first proffered distinction has no real bearing as the *Balkum* court undertook an analysis of the use of restraints claim as a Fourth Amendment [excessive force] claim "in the interest of thoroughness" and because of the plaintiff's *pro se* status. *Id.* at *10. Regarding Plaintiff's second proffered distinction, Defendants assert that "[p]atients who are not free to leave a state facility are involuntarily committed to the custody of the state." *Doe v. District of Columbia*, 920 F. Supp. 2d 112 (D.D.C. 2013). Accordingly, once Mr. Harris was committed to St. Elizabeths, he was in the custody of the District of Columbia, and there could be no subsequent seizures for purposes of the Fourth Amendment. Defs.' Reply, ECF No. 13, at 7; *see Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 274 (D.D.C. 2011) (finding that because plaintiffs were already in custody, their freedom of movement had already been terminated, so there were no "fresh 'seizures' warranting a Fourth Amendment Analysis.").

Plaintiff argues that "[w]hile DOC's 'custody' of Plaintiff during his transport to, attendance at a hearing in, and transport from D.C. Superior Court may not have constituted an actionable seizure had DOC transported and handled him in accordance with St. Elizabeths' policy, because the DOC's restraint far exceeded the restraint Plaintiff was subject to as a St. Elizabeths patient, it constituted a separate seizure under the Fourth Amendment." Pl.'s Opp'n, ECF 11, at 11. Plaintiff cites three cases which presumably support this contention, but as noted by Defendant, these cases "do not address whether the transfer of custody of an individual from one agency to another is a separate 'seizure' for Fourth Amendment purposes [but] [i]nstead, those cases address the seizure of an individual's possessory interest in property." Defs.' Reply, ECF No. 13, at 8. Accordingly, the cases are inapposite. *Cf. United States ex rel. Vanorsby v. Acevedo*, Civil Action No. 11-7384, 2012 WL 3686787, at *5 (N.D. Ill. Aug. 24, 2012) ("Once an individual

11

has been lawfully taken into custody, he has been seized for purposes of the Fourth Amendment; merely transferring custody of that individual from one law enforcement agency to another deprives him of nothing he has not already lost.") (footnote and citations omitted); *see generally Anderson v. Paloranta*, Civil Action No. 18-cv-01338, 2018 WL 7291427, at *5 (D. Colo. Dec. 20, 2018) (slip op.) (where the court rejected plaintiff [inmate's] claim that he was "seized each time he was transferred to a different facility and brought to court to defend himself" on a pending case).

Plaintiff's claim of an unreasonable seizure under the Fourth Amendment shall be dismissed because Plaintiff had already been seized when he was committed to St. Elizabeths, and accordingly, his transport to the court for a hearing, although done by an entity other than St. Elizabeths, does not constitute an actionable seizure. Because this Court has found that there was no [new] seizure, the Court need not reach the issue of reasonableness of a seizure.

**B. Plaintiff Substantive Due Process Claim (Count II) and Procedural Due Process Claim (Count III)**

**1. Plaintiff's Count II is not Redundant of Count I**

As a preliminary matter, Defendants assert that Plaintiff's Fifth Amendment substantive due process claim (Count II) should be dismissed on grounds that it is "redundant of his Fourth Amendment claim because it arises in the context of his alleged 'seizure' during transport." Defs.' Mot., ECF No. 9, at 20; citing *Graham v. M.S. Connor*, 490 U.S. 386, 395 (1989) (for the proposition that where the Fourth Amendment "provides an explicit textual source of constitutional protection. . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide"). Plaintiff counters this assertion by noting that the focus of the Supreme Court in *Graham* was a rejection of the "notion that all excessive force claims brought

under § 1983 are governed by a single generic standard." Pl.'s Opp'n , ECF No. 11, at 24. Plaintiff further elaborates that his Fourth Amendment claim focuses on the Defendants permitting the DOC "to assert its own <u>correctional</u> authority and practices on the Plaintiff" while his Fifth Amendment claim (Count II) focuses on the Defendants' failure to "consider their special obligations towards Plaintiff as a patient involuntarily committed to a mental health services facility operated by the District of Columbia for the sole purpose of <u>treatment and rehabilitation</u>."  *Id.* at 24-25. Accordingly, the Court finds unpersuasive Defendants' contention that Plaintiff's claims in Counts I and II are redundant, and Plaintiff's Count II will not be dismissed on this basis.

**2. Explanation of Plaintiff's Counts II and III**

In his Opposition, Plaintiff clarifies the basis for his due process claims in Counts II (the first and second liberty interests noted below) and III (the third liberty interest noted below) as follows:

> First, Plaintiff has a cognizable liberty interest directly under the Fifth Amendment Due Process Clause in being free from bodily restraint while involuntarily committed, at least in the absence of a showing of a legitimate and justified need for the restraint.
>
> \*      \*      \*
>
> Second, Plaintiff has a cognizable liberty interest under the Fifth Amendment Due Process Clause for the Defendants to "attend to his medical needs" due to the Defendants' "special relationships" with Plaintiff "arising from an 'affirmative exercise of [the District's] power [that] so restrains an individual's liberty that it renders him unable to care for himself." [citation omitted]. In this case, as a mental health patient involuntarily committed to St. Elizabeths for rehabilitation and treatment, Plaintiff has just such a "special relationship" with Defendants. [citation omitted]. As acknowledged by District law and the Defendants' own internal policies, the bodily restraint of mentally ill patients has a "trauma inducing aspect [ ]" and "the potential for physical and psychological harm and loss of dignity." [citation omitted]. As officials charged with carrying out the District's constitutional responsibility to attend to Plaintiff's medical needs by virtue of the District's "special relationship" to Plaintiff, Defendants were obligated to refrain from placing Plaintiff in bodily restraints absent adequate justification, which Plaintiff alleges not to exist.
>
> \*      \*      \*
>
> Third, Plaintiff has a cognizable liberty interest to be free from bodily restraints, absent "an essential state interest" such s courtroom security "specific to the defendant on trial, when

13

appearing before the D.C. Superior Court to secure his release from his involuntary commitment to St. Elizabeths. [citation omitted].

Pl.'s Opp'n, ECF No. 11, at 17-19.  In their Reply, Defendants suggest that Plaintiff failed to allege the second and third liberty interests in their Complaint, and accordingly, those claims should not be addressed by the Court. Defs.' Reply, ECF No. 13, at 10 n.2.  The Court disagrees with Defendants' characterization of Plaintiff's Complaint.  *See* Compl., ECF No. 1, ¶¶104-108 (relating to the second liberty interest); ¶¶ 111-117 (relating to the third liberty interest).

### 3. Plaintiffs' Claims under Counts II and III Survive a Motion to Dismiss

Defendants argue that "[w]hether plaintiff casts his due process claims as substantive or procedural, they fail [because] [c]ourts have held that the professional judgment standard applies to both substantive and procedural due process claims." Defs.' Reply, ECF No. 13, at 10-11; string citing *Beaulieu v. Ludeman*, 690 F. 3d 1017, 1032 (8th Cir. 2012); *Balkum v. Sawyer*, Civil Action No. 6:06-1467, 2011 U.S. Dist. LEXIS 122467, at *32 (N.D.N.Y. Oct. 21, 2011); *Thielman v. Leean*, 140 F. Supp. 2d 982, 991 (W.D. Wis. 2001) (comparing the two standards), a*ff'd* 282 F.3d 478 (7th Cir. 2003).  Defendants cite extensively from *Doe ex rel. Tarlow v. District of Columbia*, 920 F. Supp. 2d 112, 124-125 (D.D.C. 2013) focusing on the proposition that an involuntarily committed patient is entitled to "minimal procedural protections" in the form of "the exercise of appropriate professional judgment."

What the Defendants leave out of their analysis is the additional language from *Doe*, whereby the Honorable Rudolph Contreras noted that:

> To sum up: under *Youngberg*, the involuntarily committed enjoy the right to a minimum level of care and safety, and the state may (sometimes and for some reasons) physically restrain them.  Seen one way, the state's authority to impose bodily restraints is the necessary consequence of its obligation to ensure reasonable safety.  *See Youngberg*, 457 U.S. at 320, 102 S. Ct. 2452, *id.* at 324, 102 S. Ct. 2452 (emphasizing that the state "may not restrain residents except when and to the extent professional judgment deems this necessary to assure [their] safety or to provide needed training").

> \*                    \*                    \*
>
> But *Youngberg's* limited holding does not diminish the fact that "the protections of the Due Process Clause, both *substantive and procedural*, may be triggered when the State, by the affirmative acts of its agents, subjects an involuntarily confined individual to deprivations of liberty which are not among those generally authorized by his confinement." *DeShaney*, 489 U.S. at 200 n. 8, 109 S. Ct. 998 (emphasis added).

*Doe*, 920 F. Supp. 2d at 124-25.

In *Doe*, the Government's motion to dismiss was denied, in part because "plaintiffs [did] not concede that professional judgment was in fact exercised . . . [and] the court obviously [could] not resolve that question against them on a motion to dismiss." *Id*. at 126. The court explained further that it could not determine "the adequacy of the procedural protections provided [to the plaintiffs]" . . . without knowing what those procedures were, and that information was not before the court. *Id.* This Court notes that the analysis of *Youngberg* and *DeShaney* in the *Doe* case supports a denial of the Defendants' motion to dismiss because Plaintiff in this case has not conceded that professional judgment was exercised nor is this Court in possession of enough information about the way in which any such professional judgment was rendered. Genuine factual disputes cannot be decided at the motion to dismiss stage, particularly on issues such as "reasonableness" or whether professional judgment was exercised. *See generally Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 35 (D.D.C. 2018) (acknowledging that while the defendant might prevail on summary judgment, the denial of a motion to dismiss was appropriate because there was a factual dispute regarding the reasonableness of the defendant's behavior); *Richards v. Gelsomino*, 240 F. Supp. 3d 173, 179 (D.D.C. 2017) ("[A] motion to dismiss is not the proper vehicle for [resolving factual disputes]."); *Allen v. Brown*, 185 F. Supp. 3d 1, 9 (D.D.C. 2016) ("As our Court of Appeals has made clear, 'the inquiry into reasonableness must be made on a case-by-case basis,' and it must be based on an adequate record.") (quoting *Stewart v. Evans*, 275 F.3d 1126, 1130-31 (D.C. Cir. 2002)).

Furthermore, Defendants' argument that Plaintiff's pleading is somehow deficient for failure to allege that "the District did not exercise its professional judgment or stray from accepted professional judgment, practice, or standards," *see* Reply, ECF No. 13, at 12-13, is without merit. Complaint. *See* Compl., ECF No. 1, ¶¶ 62-67, 101, 102, 112 (describing the treatment Plaintiff was accorded); ¶¶ 69-74, 96-97, 107-108, 114-115, 117 (discussing applicable practices). Dismissals pursuant to Rule 12(b)(6) are generally disfavored, and "[i]n light of these liberal pleading requirements, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kingman Park Civic Ass'n v. Williams*, 348 F. 3d 1033, 1040 (D.C. Cir. 2003) (internal quotation marks omitted). Defendants' claims regarding its exercise of professional judgment are more appropriately raised in a motion for summary judgment. Accordingly, Defendants' Motion to Dismiss Counts II and III of Plaintiff's Complaint shall be denied and Counts II and III will remain standing.

**C. Plaintiff's Standing to Seek Prospective Injunctive Relief**

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry,* 570 U.S. 693 (2013) (citing Art. III § 2); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l,* 568 U.S. 398, 408 (2013). Because standing is a "threshold jurisdictional requirement," a court may not assume that a plaintiff has standing to proceed to evaluate a case on its merits. *Bauer v. Marmara*, 774 F.3d 1026, 1031 (D.C. Cir. 2014), *cert den.* 135 S. Ct. 2355 (2015). A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555

U.S. 488, 493 (2009). If standing "is lacking, then the dispute is not a proper case or controversy, [and] the courts have no business deciding it or expounding the law in the course of doing so." *Dominguez v. UAL Corp*, 666 F.3d 1359, 1361 (D.C. Cir. 2012) (alteration in original, quotation omitted). "[E]very federal court has a special obligation to satisfy itself of its own jurisdiction before addressing the merits of any dispute." *Dominguez*, *id.* at 1362 (quotation omitted).

To establish constitutional standing, a plaintiff bears the burden of demonstrating that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, — U.S. —, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan*, 504 U.S. at 560-61 (1992). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

The critical question in this case centers around injury in fact, which is the "'[f]irst and foremost'" element of standing. *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (alteration in original)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). Defendants claim that Plaintiff fails to demonstrate an injury in fact because he cannot establish that he will "again be subjected to the District's alleged restraint and seclusion practice." Defs.' Mot., ECF No. 9, at 30. In support thereof, Defendants note that Plaintiff admits that he was subjected to this practice on only one occasion, and Plaintiff will not be subjected to the practice unless he is recommitted to St. Elizabeths.

Defendants rely on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), where the Supreme Court reversed the Ninth Circuit's decision in favor of a plaintiff who requested injunctive relief

17

precluding the City from using chokeholds, after he was subjected to a chokehold during a traffic stop.  The Supreme Court explained that a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *Id.* at 101-102.  Plaintiff distinguishes *Lyons*, noting that "the Supreme Court reached this conclusion in *Lyons* in part because there was no reason to believe that the plaintiff would have 'another encounter with the police' and that either '*all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter. . . or . . . that the City ordered or authorized police officers to act in such a manner." Pl.'s Opp'n, ECF No. 11, at 26 (citing *Lyons* at 106).

In contrast, in this case: (1) Plaintiff is still subject to the original 1981 Commitment Order committing him to the custody of St. Elizabeths; (2) he is still subject to recommitment back to St. Elizabeths under a conditional release order issued by the D.C. Superior Court on May 3, 2017; and (3) he has a history of recommitment back to St. Elizabeths over the past 36 years.  See Compl., ECF No. 1, ¶¶ 8, 44, 45.  Plaintiff argues that these factors create "a sufficiently reasonably likelihood that Defendant will subject Plaintiff to the restraint practice again in the future."  Pl.'s Opp'n, ECF No. 11, at 26; *see Washington v. Harper*, 494 U.S. 210, 218-219 (1990) (finding that prisoner's challenge of forced treatment with antipsychotic drugs at a correctional mental health center was not mooted by his movement to another facility that did not administer such drugs, because he was subject to transfer back to the original facility at any time); *In re Ballay*, 482 F. 2d 648, 651 (D.C. Cir. 1973) (finding it likely that the appellant would be subject to the challenged commitment hearings again in the future because he was civilly committed on three different occasions and suffered from delusions); *Bension v. Meredith*, 455 F. Supp. 662, 666 (D.D.C. 1978)

18

(an involuntarily committed patient seeking equitable relief against an alleged deprivation of his liberty who is subsequently released into the community may seek relief where factors such as his prior history make his return to involuntary commitment "not unlikely"). Defendants attempt to distinguish the cases cited by Plaintiff insofar as "the record in [*Washington* and *In Re Ballay*] supported an inference that an inmate or former patient's mental state rendered it likely that the question presented would arise again" whereas in this case, the Court would "have to infer that plaintiff is likely to violate the conditions of his release in a manner that will subject him to recommitment at St. Elizabeths." Defs' Reply, ECF No. 13, at 16-17.

Based upon Plaintiff's lengthy history at St. Elizabeths — during which he has been granted several conditional releases since his commitment — and the fact that he was conditionally released and is subject to recommitment for violation of the conditions of his release or a deterioration of his mental health, this Court finds it reasonable to infer that Plaintiff is likely to violate the conditions of his release and be subject to recommitment at St. Elizabeths. *See* Compl., ECF No. 1, ¶ 45 ("After being conditionally released from St. Elizabeths and re-committed on multiple occasions for failing to meet the conditions of release[,]" Plaintiff was conditionally released by Order dated June 5, 2007, but he was subsequently incarcerated, then recommitted, and again conditionally released by Order dated May 3, 2017); *see also* Pl.'s Opp'n, ECF No. 11, at 26 n.8 (noting that the conditions of Plaintiff's release are "highly restrictive" and require Plaintiff to (1) participate in therapeutic activities such as structured activities at a community-based day treatment program at least three days per week and/or have approved employment at least three days per week, attend psychotherapy at least once a month, and attend AA/NA meetings weekly; and (2) comply with all requests for information on treatment made by the Forensic Outpatient Department or the Hospital ; and (3) refrain from consuming alcohol, using marijuana

or illegal drugs, and getting arrested, and Plaintiff must take all his medications).  Accordingly, this Court finds that Plaintiff has standing to pursue his claim for prospective injunctive relief.

**D. Substitution of the District of Columbia for all Named Defendants**

Defendants assert that this Court should substitute the District of Columbia in place of the four individual Defendants who have been sued in their official capacity, on grounds that a Section 1983 suit brought against municipal officials in their official capacities is equivalent to a suit against the municipality.  *See* Defs.' Mot., ECF No. 9, at 30-31; (citing *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017)).  Plaintiff opposes the substitution and notes that "[t]he *Lopez* court reasoned that retaining both a municipal officer and the municipality as defendants is redundant and an inefficient use of judicial resources[,]" *id.* at 259, but "[t]hese considerations are not applicable here because the District of Columbia has not been named as a defendant."  Pl.'s Opp'n, ECF. No. 11, at 28.  While Defendants suggest that this Court should substitute the District of Columbia in place of the four official-capacity Defendants, they identify no reason why it should be done in this case where the District of Columbia is not itself already named as a defendant.  Furthermore, Defendants do not argue that the official-capacity Defendants may not be sued.  Accordingly, Defendants' request to substitute the District of Columbia for the four official-capacity Defendants shall be denied.

A separate Order accompanies this Memorandum Opinion.

DATED: March 27, 2019                          _____/s/_____
                                                                COLLEEN KOLLAR-KOTELLY
                                                                UNITED STATES DISTRICT JUDGE