**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WARREN R. HARRIS,** **Plaintiff,** **v.** **MURIEL E. BOWSER,** *et al.*, **Defendants.** | **Civil Action No. 18-768 (CKK)** |

**PLAINTIFF'S MOTION TO
EXCLUDE THE EXPERT REPORT AND TESTIMONY OF MR. TIM GRAVETTE**

Plaintiff Warren R. Harris files this through undersigned counsel, and moves the Court to exclude the expert report and testimony of Mr. Tim Gravette. Pursuant to Local Civil Rule 7(m) counsel for Plaintiff and Defendants have conferred, and Plaintiff expects this motion to be opposed.

In support of this motion, Plaintiff respectfully refers the Court to the attached Statement of Points and Authorities. Pursuant to Local Civil Rule 7(f), Plaintiff also requests oral argument in support of its motion for summary judgment.

Respectfully submitted,

Dated: Mar. 24, 2021

/s/ Francis H. Morrison
Francis H. Morrison, Esq. (982801)
Nicholas E.O. Gaglio, Esq. (NY Bar #4024592)
Richard G.S. Lee, Esq. (1531780)
AXINN, VELTROP & HARKRIDER LLP
950 F Street NW
Washington, DC 20004
fmorrison@axinn.com

ngaglio@axinn.com
rlee@axinn.com

Jason Scherr, Esq. (466645)
Thomas S. Harman, Esq. (384140)
Vineeta Kamath, Esq. (230047)
Emily Booth, Esq. (VA Bar #94170)
Ariel Landa-Seiersen, Esq. (1670986)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel. 202.739.3000
Fax 202.739.3001
jr.scherr@morganlewis.com
thomas.harman@morganlewis.com
vineeta.kamath@morganlewis.com
emily.booth@morganlewis.com
ariel.seiersen@morganlewis.com

Mary Nell McGarity Clark, Esq. (419732)
DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street, NE, Suite 130
Washington, DC 20002
mclark@uls-dc.org

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WARREN R. HARRIS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 18-768 (CKK)** |
| **MURIEL E. BOWSER,** *et al.*, | |
| **Defendants.** | |

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF HIS MOTION TO EXCLUDE**
**THE EXPERT REPORT AND TESTIMONY OF MR. TIM GRAVETTE**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................. 2

III.  LEGAL STANDARD ......................................................................................... 5

IV.   ARGUMENT ...................................................................................................... 6

   A.  Mr. Gravette's report and testimony is inadmissible under Rule 702 because the witness
       is not qualified, and his report and testimony is neither relevant nor reliable. .................. 6

   1.  Mr. Gravette is not a qualified affirmative or rebuttal expert to opine on whether the
       NGRI Patient Court Transport Policy accords with medical or psychiatric professional
       judgment under Youngberg as he lacks any medical qualifications from which to make
       that assessment. ....................................................................................................... 6

   2.  Mr. Gravette's report and testimony are irrelevant to determining whether Defendants'
       NGRI Patient Court Transport Policy or its application to Mr. Harris accords with
       medical or psychiatric professional judgment because it evaluates whether the policy
       accords with "penological" professional judgment. ...................................................... 11

   3.  Mr. Gravette's report and testimony are unreliable because he fails to explain why the
       correctional standards he identifies to justify the NGRI Patient Court Transport Policy
       are applicable to transporting and restraining NGRI patients......................................... 14

V.    CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Ambrosini v. Labarraque, 101 F.3d 129 (D.C. Cir. 1996)............................................................ 11

Arias v. DynCorp, 928 F. Supp. 2d 10 (D.D.C. 2013) ............................................................ 9, 10

Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco., C.A., 315 F. Supp. 3d 101 (D.D.C.
    2018).............................................................................................................................. 11, 12

Blake v. Securitas Sec. Servs., Inc., 292 F.R.D. 15 (D.D.C. 2013)............................................... 9

Bourjaily v. United States, 483 U.S. 171 (1987) .......................................................................... 5

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)............................................... 5, 6, 11

Groobert v. President and Directors of Georgetown College, 219 F. Supp. 2d 1 (D.D.C. 2002) .. 6

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) .......................................................... 5

LaShawn A. v. Dixon, 762 F. Supp. 959 (D.D.C. 1991) ............................................................... 3

Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd., No. 5:16-CV-06370-EJD, 2019 WL
    4780183 (N.D. Cal. Sept. 30, 2019)..................................................................................... 7, 9

Parsi v. Daioleslam, 852 F.Supp.2d 82 (D.D.C. 2012)............................................................... 14

Rothe Dev., Inc. v. Dep't of Def., 107 F. Supp. 3d. 183 (D.D.C. 2015) ................................. 7, 11

Youngberg v. Romeo, 457 U.S. 307 (1982) ................................................................... 1, 2, 10, 12

**Statutes**

D.C. Code § 24-501(d)(1)............................................................................................................ 15

**Other Authorities**

Scheduling and Procedures Order, ECF No. 29 (D.D.C. May 23, 2019) ...................................... 9

**Rules**

Fed. R. Civ. P. 26(a)(2)(D) ........................................................................................................... 9

Fed. R. Civ. P. 37(c)(1)................................................................................................................. 9

Fed. R. Evid. 104(a) ...................................................................................................................... 5

Fed. R. Evid. 401 .......................................................................................................................... 6

Fed. R. Evid. 702 ....................................................................................................................... 1, 5

**Treatises**

McCormick on Evid. § 12.............................................................................................................. 5

## I.    **INTRODUCTION**

Plaintiff Warren R. Harris, a mental health patient involuntarily committed by the District of Columbia ("District" or "D.C.") after being found not guilty by reason of insanity ("NGRI"), brings this 42 U.S.C. § 1983 ("Section 1983") lawsuit against Defendants Muriel E. Bowser (the District Mayor), Barbara J. Bazron (Director of the D.C. Department of Behavioral Health ("DBH")), Mark J. Chastang (CEO of St. Elizabeths Hospital (the "Hospital")), and Quincy L. Booth (Director of the D.C. Department of Corrections ("DOC")), in their official capacities.

Mr. Harris alleges that Defendants maintain an unconstitutional policy of transporting NGRI patients of the Hospital to court by using DOC personnel instead of Hospital staff, using DOC standards instead of medical or psychiatric standards to use three-point metal restraints on the NGRI patient without any regard as to their effect on the NGRI patient's behavioral health or ability to move without restraints in the community ("NGRI Patient Court Transport Policy"). Mr. Harris further alleges that on April 5, 2017, the DOC transported Mr. Harris in restraints between the Hospital and D.C. Superior Court in accordance with the NGRI Patient Court Transport Policy, violating his Fifth Amendment substantive and procedural due process rights.[1]

Mr. Harris now files this motion pursuant to Federal Rule of Civil Procedure 7(b) to exclude Defendants' proffered expert report and testimony of Mr. Tim Gravette. As discussed further below, Mr. Gravette's report and testimony should be excluded as it fails to meet the applicable legal requirements under Federal Rule of Evidence 702 ("Rule 702"). For the NGRI Patient Court Transport Policy to accord with due process, it must not "substantial[ly] depart[] from accepted professional judgment," Youngberg v. Romeo, 457 U.S. 307, 323 (1982), as

---

[1] Mr. Harris's complaint brought claims under both the Fourth and Fifth Amendments. See Compl., ECF No. 1 ¶¶ 78-118. The Fourth Amendment claim was dismissed by this court on March 27, 2019. See Mem. Op., ECF No. 20 at 8-12.

"made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded," id. at 323 n.30, 324. And under Rule 702, an expert's report and testimony is admissible only if the trial court finds, by a preponderance of the evidence, that the expert is qualified and that the expert's testimony is both reliable and relevant. Defendants' expert Mr. Gravette, a non-medical, non-psychiatric professional, purports that the NGRI Patient Court Transport Policy is "well within the standards of accepted professional penological judgement." Expert Report of Tim Gravette at 3 ("Gravette Report"), attached as Ex. B of the Declaration of Richard G.S. Lee ("Lee Decl."). As will be demonstrated below, Mr. Gravette admits he is not a qualified medical or psychiatric expert, and his testimony is neither reliable nor relevant to whether the NGRI Patient Court Transport Policy accords with the professional judgment of a psychiatric medical professional.

Pursuant to Local Civil Rule 7(f), Mr. Harris also requests oral argument in support of this motion to exclude.

## II.    BACKGROUND

As further explained in Mr. Harris's motion for summary judgment dated March 24, 2021 ("Harris Summary Judgment Motion"), under Youngberg, due process prohibits the state from restraining involuntarily committed patients "except when and to the extent professional judgment deems this necessary to assure [their] safety or to provide needed training." Youngberg, 457 U.S. at 324. This judgment "should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded." Id. at 323 n.30. And while "day-to-day decisions regarding care—including decisions that must be made without delay—necessarily will be made in many instances by employees without formal training," those employees are still "subject to the supervision of qualified persons." Id. "[E]xpert testimony may be relevant for determining

whether an agency's decisions substantially depart from the requisite professional judgment." LaShawn A. v. Dixon, 762 F. Supp. 959, 995 (D.D.C. 1991) (citing Youngberg, 457 U.S. at 323 n. 31), aff'd and remanded sub nom. LaShawn A. by Moore v. Kelly, 990 F.2d 1319 (D.C. Cir. 1993).

On January 22, 2020, Mr. Harris disclosed to Defendants an expert report by Dr. Tobias D. Wasser, a board-certified adult and forensic psychiatrist who is both an Assistant Professor of Psychiatry at the Yale School of Medicine and the Chief Medical Officer of the Whiting Forensic Hospital in Connecticut. See Expert Report of Tobias D. Wasser, M.D at 4-5 ("Wasser Report"), attached as Lee Decl. Ex. A. Based on a review of the applicable medical standards, Dr. Wasser concluded that while the hospital faces "an enormous task in balancing the rights of the individuals they serve with maintaining the safety of other patients, hospital staff and the community," id. at 8, the NGRI Patient Court Transport Policy failed to strike the appropriate balance under prevailing medical standards and norms as it is a "blanket policy that mandates all patients are transferred to a particular location by DOC, which then necessitates mechanical restraint based on DOC policy," which violates the "basic tenet of psychiatric practice . . . that patients should be treated in the least restrictive manner and setting safely possible based upon an individualized assessment of the patient's risk." Id. at 9.

According to Dr. Wasser, medical standards and norms require adherence to the least restrictive principles for three reasons. First, it "respects the individual liberty interests of the patient, and thereby demonstrates respect for their civil rights, which can in and of itself be therapeutic by enhancing the patient's alliance with treatment providers." Id. Second, "while increasingly restrictive interventions may immediately decrease an individual's short-term risk for violent behavior, it has been repeatedly demonstrated that greater utilization of physical

interventions (e.g. restraint and seclusion) actually increase rates of aggression in psychiatric hospitals, while reducing reliance on these interventions decrease them." Id. Third, "physicians and mental health clinicians" have a "responsibility" to "use due diligence when implementing restrictive techniques and intervene in this manner only when absolutely necessary" as restraints "can be a traumatizing experience for a patient." Id. at 9-10.

As a "rebuttal" to the Wasser Report, on February 19, 2020, Defendants disclosed to Mr. Harris an expert report by Mr. Tim Gravette, a claimed expert in the "field of penology" and "a twenty-year corrections veteran," including nine years as an Associate Warden with the Federal Bureau of Prisons. Gravette Report, Lee Decl. Ex. B, at 1. He has never worked as a forensic medical professional or in any hospital (forensic psychiatric or otherwise), Gravette Dep. at 19:6-14, attached as Lee Decl. Ex. C, nor does he have any formal education, training or experience in transporting NGRI patients, id. at 19:15-18; 24:3-21.

The Gravette Report concludes that "Dr. Wasser's report was one-sided and addressed only the medical aspects of transporting forensic patients" because, despite Dr. Wasser's focus on describing prevailing medical standards and norms regarding NGRI patient restraints and how safety is factored into those standards and norms, he allegedly "ignored the penological and public safety aspects of Harris's transport to and from Court." Gravette Report, Lee Decl. Ex. B, at 2. According to the Gravette Report, "[t]he District's use of restraints to transport Harris was well within the standards of accepted professional penological judgement . . . [b]ased on [Mr. Gravette's] review of policies and procedures utilized for inmate escort." Id. at 3. Mr. Gravette claims that these alleged correctional standards, which include those from the United States Marshals Service, the United States Immigration and Customs Enforcement Agency, the Federal Bureau of Prisons, United States Customs and Border Patrol, and the Boulder Colorado Sheriffs

Office, are "consistent with modern <u>correctional</u> escort procedures" and "utilize the same basic escort restraint procedures as the DCDOC for <u>inmate</u> transport." <u>Id.</u> (emphasis added). Mr. Gravette does not opine, nor could he opine, on whether Dr. Wasser is incorrect in concluding that the NGRI Patient Court Transport Policy violates <u>medical or psychiatric</u> standards and norms.

## III.    <u>LEGAL STANDARD</u>

Rule 702 sets the standard for when an expert witness opinion is admissible:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, trial courts have a "gatekeeping" role. <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 597 (1993). In exercising this role, trial courts must first find, by a preponderance of the evidence, that the expert is <u>qualified</u>, that the expert's testimony is both <u>reliable</u> and <u>relevant</u>. <u>Id.</u> at 589; <u>see also</u>  Fed. R. Evid. 104(a); <u>Bourjaily v. United States</u>, 483 U.S. 171, 175-76 (1987) (stating that the proponent has the burden of establishing that preliminary fact questions for admissibility are traditionally met by a "preponderance of the evidence").

For the witness to be qualified as an expert, he or she must have "sufficient skill or knowledge related to the pertinent field or calling that her inference will probably aid the trier in the search for truth." McCormick on Evid. § 12.

For the expert's testimony to be reliable, the court must find that it has a "reliable basis in the knowledge and experience of [the relevant] discipline." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 149 (1999) (quoting <u>Daubert</u>, 509 U.S. at 592). In conducting this inquiry, the court may review several factors, including:

(1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Groobert v. President and Directors of Georgetown College, 219 F. Supp. 2d 1, 6 (D.D.C. 2002) (citing Daubert, 509 U.S. at 593-94). "These factors are neither exclusive nor dispositive, and their application depends on the particular facts of each case." Id. (citing Kumho Tire, 526 U.S. at 150).

For the expert's testimony to be relevant, "the evidence or testimony [must] assist the trier of fact to understand the evidence or to determine a fact in issue . . . . Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 (internal quotation marks and citations omitted). See also Fed. R. Evid. 401 (evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action").

## IV.   ARGUMENT

**A. Mr. Gravette's report and testimony is inadmissible under Rule 702 because the witness is not qualified, and his report and testimony is neither relevant nor reliable.**

**1. Mr. Gravette is not a qualified affirmative or rebuttal expert to opine on whether the NGRI Patient Court Transport Policy accords with medical or psychiatric professional judgment under Youngberg as he lacks any medical qualifications from which to make that assessment.**

Defendants offer Mr. Gravette's report and testimony ostensibly as a rebuttal to Dr. Wasser's expert report and testimony that the NGRI Patient Court Transport Policy substantially departs from professional judgment. See Gravette Report, Lee Decl. Ex. B, at 2. But to serve as a proper rebuttal, the witness must be qualified to contradict or rebut the subject matter and methodologies used to reach the conclusions made in the affirmative expert opinion. See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd., No. 5:16-CV-06370-EJD, 2019 WL

4780183, at *6 (N.D. Cal. Sept. 30, 2019) (stating that "[r]ebuttal experts . . . are allowed 'solely to contradict or rebut evidence on the same subject matter identified' by the opposing expert witness") (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)).

For example, in Rothe Dev., Inc. v. Dep't of Def., 107 F. Supp. 3d. 183 (D.D.C. 2015), aff'd sub nom, Rothe Dev., Inc. v. United States Dep't of Def., 836 F. 3d 57 (D.C. Cir. 2016), cert. denied, Rothe Dev. Inc. v. Dep't of Def., 138 S. Ct. 354 (2017), Defendants submitted reports by two economics Ph.Ds. who ran statistical analyses to conclude that "socially disadvantaged and minority-owned small businesses are significantly less likely, statistically, to win government contracts than their non-minority and non-SDB counterparts," and that "minority-owned businesses across the country are substantially underutilized in government contracting." Id. at 194. Plaintiff corporation offered the testimony of one of its vice presidents "as a response to the errors and omissions in the reports served by Defendants." Id. at 203 (internal quotation marks, brackets, and citation omitted). The court found that the Plaintiff's witness was not a qualified "[r]ebuttal [e]xpert" because he admitted to a "lack of training, education, knowledge, skill, and experience in any statistical or econometric methodology" necessary to evaluate plaintiff experts' statistical analyses. Id. at 202-203.

As with the rebuttal expert in Rothe Dev., Mr. Gravette is not a qualified rebuttal expert because he lacks the "training, education, knowledge, skill, and experience" in the subject matter and methodologies used by Dr. Wasser. Dr. Wasser squarely addresses whether the NGRI Patient Court Transport Policy represents a substantial departure from accepted professional medical or psychiatric judgment —that is, the standards and norms applicable to medical professionals administering a state-run forensic psychiatric rehabilitation program. Wasser Report, Lee Decl. Ex. A, at 1 (emphasis added). Dr. Wasser reaches his conclusions based on his

experience and qualifications as a board-certified adult and forensic psychiatrist, assistant professor of psychiatry, and a state forensic hospital administrator experienced working with involuntarily committed patients. Id. at 4-5. But Mr. Gravette claims to be only an "expert in the field of penology" and a "twenty-year corrections veteran." Gravette Report, Lee Decl. Ex. B, at 1. He has never worked as a forensic medical professional or in any hospital (forensic psychiatric or otherwise), Gravette Dep., Lee Decl. Ex. C, at 19:6-14, nor does he have any formal education, training or experience in transporting NGRI patients, id. at 19:15-18; 24:3-21. Mr. Gravette himself states that he is "not a mental health professional." Id. at 17:21-18:2.

Mr. Gravette further lacks any qualifications to assess the appropriate "public safety aspects" of NGRI Patient restraint, Gravette Report, Lee Decl. Ex. B, at 2, as safety concerns arising from NGRI Patients require medical or psychiatric experience. See Wasser Report, Lee Decl. Ex. A, at 9 ("while increasingly restrictive interventions may immediately decrease an individual's short-term risk for violent behavior, it has been repeatedly demonstrated that greater utilization of physical interventions (e.g., restraint and seclusion) actually increase rates of aggression in psychiatric hospitals, while reducing reliance on these interventions decrease them"). And as Dr. Wasser notes in his reply report:

> I am puzzled by the defendants' report, as it does not seem to address the same question that was posed to me. Further, the expert selected, despite having ample and impressive qualifications in his professional field, is not a forensic psychiatrist and has no experience working in a forensic psychiatric hospital, leaving him unable to answer the specific medical/psychiatric question at issue in this case.

Reply Report of Tobias D. Wasser, M.D at 2 ("Wasser Reply"), attached as Lee Decl. Ex. D.

Mr. Gravette therefore lacks any medical or psychiatric qualifications or experience from which to rebut Dr. Wasser's conclusion that the NGRI Patient Court Transport Policy and its application to Mr. Harris failed to meet medical or psychiatric norms and standards.

Insofar as Mr. Gravette's report and testimony is being offered as timely disclosed affirmative expert testimony,[2] Defendants must still show how the expert's "academic and professional experiences make him qualified to testify as to" relevant factual issues. Arias v. DynCorp, 928 F. Supp. 2d 10 (D.D.C. 2013). In Arias, for example, plaintiffs offered an opinion by a "physician" and "specialist in occupational and environmental medicine" asserting that a particular herbicide "contained excessive concentrations of glyphosate and surfactant." Id. (citation and internal quotation marks omitted). The court found that despite the despite witness's "impressive credentials" as a "physician" and "specialist in occupational and environmental

_____

[2] Despite being styled a "rebuttal" report, there is a substantial legal and factual basis to conclude that the Gravette Report is actually an untimely disclosed affirmative report. Rebuttal experts . . . are allowed 'solely to contradict or rebut evidence on the same subject matter identified' by the opposing expert witness." Optronic Techs., 2019 WL 4780183, at *6 (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). "Where a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a) and the Court's governing scheduling order." Blake v. Securitas Sec. Servs., Inc., 292 F.R.D. 15, 18 (D.D.C. 2013). As explained above, despite being submitted as a "rebuttal" to Dr. Wasser's conclusion that the NGRI Patient Court Transport Policy failed to comport with medical or psychiatric standards, the Gravette Report focuses on an entirely different question—whether the NGRI Patient Court Transport Policy comports with correctional, not medical or psychiatric, standards. Mr. Gravette also has no qualifications from which to argue, and in fact does not argue, that Dr. Wasser lacked a sufficient basis to conclude that the NGRI Patient Court Transport Policy failed to comport with medical or psychiatric standards. As a result, Defendants should have submitted the Gravette Report as an affirmative report due on January 8, 2020, not as a rebuttal expert report due on February 5, 2020, as submitting it as a rebuttal report effectively bought Defendants an extra month to prepare their report and shortened the amount of time Mr. Harris had to prepare a response without Mr. Harris's consent or leave of court. See Scheduling and Procedures Order, ECF No. 29 (D.D.C. May 23, 2019).

If a party fails to make expert disclosures "at the times and in the sequence that the court orders," Fed. R. Civ. P. 26(a)(2)(D), the propounding party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless, id. 37(c)(1). Mr. Harris does not request the court to strike the Gravette Report on this basis, as he believes that the delay, while substantially unjustified, is ultimately harmless given the failure of Mr. Gravette's report and testimony to satisfy the requirements of Rule 702.

medicine," plaintiffs failed to show "how his academic and professional experiences make him qualified to testify as to the proper concentration of glyphosate and surfactant in" the herbicide. Id.

Even assuming that as Defendants intend Mr. Gravette to act as an affirmative witness for its defense, it appears that Mr. Gravette proposes to affirmatively testify that Defendants' NGRI Patient Court Transport Policy and its application to Mr. Harris accords with "professional judgment." As discussed in Section II above and in the Harris Summary Judgment Motion, the professional judgment under Youngberg used to evaluate the NGRI Patient Court Transport Policy is one exercised "by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded." Youngberg, 457 U.S.  at 323 n.30. But Mr. Gravette is an "expert in the field of penology" and a "twenty-year corrections veteran," Gravette Report, Lee Decl. Ex. B, at 1, and further discussed above, he has no experience or qualifications as a medical professional, or experience in transporting NGRI patients or assessing whether an NGRI patient who is not a pre-trial detainee or incarcerated prisoner found guilty of a crime requires restraints during transport.

 Simply put, Mr. Gravette is no better positioned than a lay person in the jury to assess whether the NGRI Patient Court Transport Policy or its application to an NGRI Patient such as Mr. Harris accords with medical, psychiatric professional judgment. See Arias, 928 F. Supp. 2d at 18 (finding expert testimony that herbicide contained "excessive concentrations of glyphosate and surfactant" by comparing the herbicide's "composition and application rate with the manufacturer's recommended concentrations and application directions" improper because "the jury is just as competent to consider and weigh this evidence as is an expert witness and just as well qualified to draw the necessary conclusions therefrom") (internal quotation marks, brackets,

and citations omitted). Mr. Gravette therefore lacks the medical or psychiatric experience to qualify him to either act as a rebuttal expert to the Wasser Opinion or as an affirmative expert as to whether the NGRI Patient Court Transport Policy or its application to Mr. Harris substantially departs from professional judgment as exercised by a medical or psychiatric professional, to make his testimony admissible.

> **2. Mr. Gravette's report and testimony are irrelevant to determining whether Defendants' NGRI Patient Court Transport Policy or its application to Mr. Harris accords with medical or psychiatric professional judgment because it evaluates whether the policy accords with "penological" professional judgment.**

As with any other proffered piece of evidence, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 (internal quotations and citations omitted). This relevancy standard is "aptly described … as one of fit." Id. (citation omitted). The "dispositive question is whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, not whether the testimony satisfies the plaintiff's burden on the ultimate issue at trial." Ambrosini v. Labarraque, 101 F.3d 129, 135 (D.C. Cir. 1996); see also Rothe Dev., 107 F. Supp. 3d. at 197 (the "district court must determine whether the proffered expert testimony is sufficiently tied to the facts of the case that it will aid the factfinder in resolving a factual dispute") (internal quotation marks, brackets, and citation omitted).

For example, in Bazarian International Financial Associates, LLC v. Desarrollos Aerohotelco, C.A., 315 F. Supp. 3d 101 (D.D.C. 2018), the plaintiff alleged that the defendants breached a written agreement requiring payment of a 2% "debt fee" to the plaintiff. Id. at 109. The plaintiff sought to exclude defendant's expert testimony on various issues, including "whether a 2% debt fee, like that found in the Agreement at issue in this case, is standard in the industry for investment banking contracts like the one at issue in this case." Id. at 118 (internal

quotation marks and citation omitted). Because the contract "clearly provide[d] that the debt fee is to be based on a flat two-percent (2%) of the gross amount of the debt financing to the Project," the court found that "[a]ny testimony as to what fee amount is industry standard" to be "irrelevant" and therefore inadmissible. Id. at 119 (internal quotation marks and citation omitted). The court also found the expert's proposed testimony about "whether it is commonly understood in the industry that a commission for arranging debt . . . is calculated based on the full amount lent by a lending consortium or . . . only on the amount actually lent by the lead arranger for the consortium" similarly irrelevant and inadmissible, as the contract "unambiguously specifies that the debt fee is to be calculated based on the gross amount of the debt financing provided to the Project . . . not any particular lender's contribution to the Project." Id. at 119-20 (internal quotation marks and citation omitted).

Mr. Gravette attempts to address whether Defendants' NGRI Patient Court Transport Policy substantially departs from "professional judgment." But as discussed in Section II above and in Mr. Harris's summary judgment motion, according to Youngberg, the professional judgment used to evaluate the NGRI Patient Court Transport Policy is one exercised "by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded." Youngberg, 457 U.S.  at 323 n.30. And while the actual decision and application of restraints may be made by someone other than a medical professional, a medical professional must still supervise and train the individuals deciding to apply and applying the restraints. Id. ("[o]f course, day-to-day decisions regarding care—including decisions that must be made without delay—necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons").

The Gravette Report focuses on whether "[t]he District's use of restraints to transport Harris was well within the standards of accepted professional penological judgement." Gravette Report, Lee Decl. Ex. B, at 3. It further concludes that the NGRI Patient Court Transport Policy accords with "policies and procedures utilized for inmate escort" including by the United States Marshals Service, the United States Immigration and Customs Enforcement Agency, the Federal Bureau of Prisons, United States Customs and Border Patrol, the Boulder Colorado Sheriff's Office, and the Chenango County Sheriff's Office, with no explanation as to why standards applicable to correctional facilities (the constitutionality of which is not before this Court) should apply to the administration of a state-run mental health institution. Id. Furthermore, as discussed in Section IV.A.1 above, Mr. Gravette has no experience or qualifications as a medical professional or experience in transporting NGRI patients or assessing whether an NGRI patient who is not a pre-trial detainee or incarcerated prisoner found guilty of a crime requires restraints during transport. The Wasser Reply further highlights Mr. Gravette's inability to assist the jury by explaining how Mr. Harris's transport and restraints accords with judgment as exercised by a medical professional, noting that the Gravette Report fails to "answer the specific medical/psychiatric question at issue in this case." Wasser Reply, Lee Decl. Ex. D, at 2.

Mr. Gravette's report and testimony should therefore be excluded as it is irrelevant and will not assist the trier of fact to determine whether the NGRI Patient Court Transport Policy and its application on Mr. Harris substantially departs from professional judgment as exercised by a medical, psychiatric professional.

**3. Mr. Gravette's report and testimony are unreliable because he fails to explain why the correctional standards he identifies to justify the NGRI Patient Court Transport Policy are applicable to transporting and restraining NGRI patients.**

Even assuming that it is relevant for Mr. Gravette to testify why "[t]he District's use of restraints to transport Harris was well within the standards of accepted professional penological judgement" as opposed to a medical judgment, Gravette Report, Lee Decl. Ex. B, at 3, his testimony is still inadmissible as it fails to meet Rule 702's reliability standards.

For an expert report "identifying applicable professional standards and the defendants' performance in light of those standards" to be reliable, the expert must "identify specific and objective standards, not rely on his personal opinions about what professional standards should be." Parsi v. Daioleslam, 852 F.Supp.2d 82, 89 (D.D.C. 2012) (citations omitted). In Parsi, a purported expert opined that under "a one-page 'Code of Ethics' adopted . . . by the Society of Professional Journalists . . . defendant should have allowed plaintiffs to respond to his articles." Id. at 86-87. The court found that the expert failed to give "any convincing explanation for why he relied exclusively on the SPJ Code," which was only "embraced by thousands of journalists" and not a "universal mandate," to "define the pertinent professional standard." Id. at 89-90. The court further found that the expert failed to provide any explanation as to how the SPJ Code imposed on journalists "a duty to avoid 'willful blindness,' and a duty to allow responses," having merely provided conclusory assertions such as "you just have to research the literature" and that "it would be 'pointless' to try to cite specific examples." Id. at 90 (brackets and citations omitted).

In this case, Mr. Gravette fails to explain why any of his identified standards, which describe the use of restraints by correctional and law enforcement officials against individuals suspected of or found to have violated the law, should also be applied to NGRI patients who are

14

not suspected of committing a criminal offence—and indeed, are instead specifically

"acquitted . . . on the ground that [they were] insane at the time of [the offense's] commission."

D.C. Code § 24-501(d)(1). Mr. Gravette's report and testimony should therefore be excluded for

failing to meet Rule 702's reliability requirements.

## V.   CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests oral argument under Local

Civil Rule 7(f) in support of his motion to exclude Mr. Gravette's report and testimony, and that

his motion to exclude Mr. Gravette's report and testimony be GRANTED.


Respectfully submitted,


Dated: Mar. 24, 2021                         /s/ Francis H. Morrison
                                             Francis H. Morrison, Esq. (982801)
                                             Nicholas E.O. Gaglio, Esq. (NY Bar
                                             #4024592)
                                             Richard G.S. Lee, Esq. (1531780)
                                             AXINN, VELTROP & HARKRIDER LLP
                                             950 F Street NW
                                             Washington, DC 20004
                                             fmorrison@axinn.com
                                             ngaglio@axinn.com
                                             rlee@axinn.com

                                             Jason Scherr, Esq. (466645)
                                             Thomas S. Harman, Esq. (384140)
                                             Vineeta Kamath, Esq. (230047)
                                             Emily Booth, Esq. (VA Bar #94170)
                                             Ariel Landa-Seiersen (1670986)
                                             MORGAN, LEWIS &amp; BOCKIUS, LLP
                                             1111 Pennsylvania Avenue, NW
                                             Washington, DC 20004
                                             Tel. 202.739.3000
                                             Fax 202.739.3001
                                             jr.scherr@morganlewis.com
                                             thomas.harman@morganlewis.com
                                             vineeta.kamath@morganlewis.com
                                             emily.booth@morganlewis.com

ariel.seiersen@morganlewis.com

Mary Nell McGarity Clark, Esq. (419732)
DISABILITY RIGHTS DC AT
UNIVERSITY LEGAL SERVICES
220 I Street, NE, Suite 130
Washington, DC 20002
mclark@uls-dc.org

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WARREN R. HARRIS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 18-768 (CKK)** |
| **MURIEL E. BOWSER,** *et al.*, | |
| **Defendants.** | |

**[PROPOSED] ORDER**

Having considered the moving and opposition papers of the parties, the Court **GRANTS**

Plaintiff's Motion to Exclude the Expert Testimony of Mr. Tim Gravette. Mr. Tim Gravette is

precluded from offering declarations and testimony at trial for any purpose related to this matter.

**SO ORDERED.**

Dated:

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge